IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE ELECTRONIC DATA SYSTEMS CORP. "ERISA" LITIGATION | : : : : : : : | CASE NO. 6:03-MD-1512 LEAD CASE: 6:03-CV-126 ("ERISA") **ORAL HEARING REQUESTED** |

## LEAD PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF PROPOSED SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION

## TABLE OF CONTENTS

**Page**

I.      RELIEF REQUESTED.................................................................................1

II.     BACKGROUND .....................................................................................1

III.    THE SETTLEMENT ................................................................................4

      A.      The Settlement Negotiations.....................................................4

      B.      The Settlement Terms...............................................................5

      C.      Implementation of the Notice Plan. .........................................6

IV.     ARGUMENT IN SUPPORT OF SETTLEMENT ............................................8

      A.      The Law Favors and Encourages Settlement.............................8

      B.      The Role of the Court in Determining Whether to Approve a Class
             Action Settlement.....................................................................8

      C.      The Settlement is "Fair, Adequate and Reasonable.".................9

      D.      The Proposed Settlement Class Meets the Prerequisites for Class
             Certification Under Fed. R. Civ. P. 23(a) and (b).......................12

      E.      The Forms of Notice to Class Members Satisfy Rule 23 and Due
             Process Requirements ...............................................................14

      F.      The Plan of Allocation Should be Approved...............................14

V.      CONCLUSION.......................................................................................16

853447v1/006209

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 U.S. Dist. LEXIS 33981
(C.D. Cal. Apr. 16, 2008) ................................................................................................ 12, 13

*Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ..................... 9

*Banyai v. Mazur*, 205 F.R.D. (S.D.N.Y. 2002) ........................................................................... 13

*Brieger v. Tellabs, Inc.*, 245 F.R.D. 345 (N.D. Ill. 2007) ........................................................... 12

*Carson v. Am. Brands, Inc.*, 450 U.S. 79n.14 (1981) .................................................................. 9

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................................ 8

*D. H. Overmyer Co. v. Loflin*, 440 F.2d 1213 (5th Cir.), *cert. denied*, 404 U.S. 851
(1971) ............................................................................................................................... 8

*Fla. Trailer & Equip. v. Deal*, 284 F.2d 567 (5th Cir. 1960) ................................................... 8, 9

*Furstenau v. AT&T Corp.*, No. 02-5409, 2004 U.S. Dist. LEXIS 27042 (D.N.J.
Sept. 2, 2004) ................................................................................................................... 12

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, MDL No. 1500, 2006 U.S.
Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .................................................................... 16

*In re Chicken Antitrust Litig.*, 669 F.2d 228  (5th Cir. 1982) ..................................................... 15

*In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004) ........................................ 12

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .................................. 8

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D.
Mich. 2008) ...................................................................................................................... 12

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................... 16

*In re Household Int'l., Inc. ERISA Litig.*, No. 02-8921 (N.D. Ill. Nov. 22, 2004) ...................... 16

*In re Mirant Corp. ERISA Litig.*, No. 03-1027 (N.D. Ga. June 12, 2007) ................................... 16

*In re Oracle Sec. Litig.*, No. 90-0931 U.S. Dist. LEXIS 21593 (N.D. Cal. Jun. 16,
1994) ................................................................................................................................ 15

853447v1/006209

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) ........................................ 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL-1335, 2006 U.S. Dist. LEXIS
    58278 (D.N.H. Aug. 15, 2006) ................................................................................ 12

*In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 U.S. Dist. LEXIS 19786
    (S.D.N.Y. Oct. 5, 2004) .......................................................................................... 12

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. Apr. 25, 2008)................................ 10

*La Rue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020 (2008).............................................. 13, 14

*Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007) .............................. 4

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................. 15

*Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977) ...................................... 8

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................ 14

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ...................................................... 9

*Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975)........................................ 8

*Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ........................................ 9, 11

*Providian Financial Corp. ERISA Litigation In re*, 2002 WL 31785044 (N.D. Cal.
    2002) ...................................................................................................... 16

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) ............................................... 12, 13

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ................................................ 11

*Reinhart v. Lucent Technologies, Inc.*, No. 01-cv-3491 (D.N.J. March, 15, 2004)....................... 16

*Ruiz v. McKaskle*, 724 F.2d 1149 (5th Cir. 1984) (per curiam)...................................... 8

*Salinas v. Roadway Express, Inc.*, 802 F.2d 787 (5th Cir. 1986) ...................................... 9

*Smith v. Aon Corp.*, 238 F.R.D. 609 (N.D. Ill. 2006) .................................................. 12

*Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474
    (S.D. Ga. 1991).......................................................................................... 13

*United States v. City of Miami*, 614 F.2d 1322 (5th Cir. 1980), *on reh'g*, 664 F.2d
    435 (5th Cir. 1981)....................................................................................... 9

*United States v. Tex. Educ. Agency*, 679 F.2d 1104 (5th Cir. 1982) ...................................... 11

853447v1/006209

*Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir. 1982) ................................................................. 14

*White v. NFL*, 822 F. Supp. 1389 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994) .................................................................................................................................... 15

*Williams v. First Nat'l Bank*, 216 U.S. 582  (1910).......................................................... 8

*Young v.* Katz, 447 F.2d 431 (5th Cir. 1971) ......................................................................... 8

**Statutes**

15 U.S.C. § 77e(a)(2) ......................................................................................................... 4, 13

28 U.S.C. § 1407.................................................................................................................... 2

29 U.S.C. § 1103(a) ............................................................................................................. 13

ERISA § 409(a), 11 U.S.C. § 1109(a) ........................................................................... 14, 19

ERISA § 409, 11 U.S.C. § 1109 ........................................................................................ 14

**Rules**

Fed. R. Civ. P. 23(b)(1)................................................................................................. 12, 13

Fed. R. Civ. P. 23(b)(1)(A) .............................................................................................. 12

Fed. R. Civ. P. 23(b)(1)(B) .............................................................................................. 12

Fed. R. Civ. P. 23(e) ..................................................................................................... 8, 14

Fed. R. Civ. P. 23(g) ........................................................................................................ 12

## I.  **RELIEF REQUESTED**

Lead Plaintiffs Jeffrey Smith and Richard Mizell, by and through undersigned Class Counsel, respectfully move the Court for entry of an Order and Final Judgment, finally approving the Class Action Settlement Agreement, dated February 14, 2008, as subsequently amended to include requested changes by the Independent Fiduciary ("Settlement Agreement"), final certification of the Settlement Class, preliminarily certified in the Findings and Order Preliminarily Approving Proposed Settlement, Approving Form and Dissemination of Class Notice, and Setting Date for Hearing on Final Approval ("Preliminary Approval Order"; Dkt. No. 552), and for entry of an order approving the proposed Plan of Allocation of the Settlement Funds.  A proposed Order and Final Judgment Approving Proposed Settlement and proposed Order Approving EDS 401(k) Plan of Allocation are submitted herewith.

The Settlement – which will provide an immediate cash payment of $12.5 million plus injunctive relief (which relief includes a guarantee of future cash payments) that has been valued at no less than $19 million, for a total minimum settlement value of $31.5 million – provides substantial benefits to the Plan[1] and the entire Class, and removes the delay, risk of non-recovery and expense inherent in a complex ERISA case such as this.  This Settlement is supported by the U.S. Department of Labor and by the mediator, Judge Parker, and has been reviewed and approved by the Independent Fiduciary on behalf of the EDS 401(k) Plan.  For the reasons explained herein, the Settlement is fair, adequate and reasonable, and is not the product of collusion between the parties and warrants final approval by this Court.

## II.  **BACKGROUND**

The Court has become familiar with this action over the nearly six-year course of the litigation.  As summarized in the ERISA Parties' Joint Motion for Preliminary Approval of Settlement and Approval of Class Notice with Brief in Support (Dkt. No. 550) ("Preliminary Approval Motion"), the first ERISA complaints were filed in October 2002.  On March 7, 2003,

---

[1] The capitalized terms used in this memorandum and the papers being filed this date are defined in the Settlement Agreement.

the Judicial Panel on Multidistrict Litigation centralized twenty-six separate actions in the Eastern District of Texas under the authority of 28 U.S.C. § 1407. These cases had been filed against Electronic Data Systems Corp. ("EDS") and certain of its present or former officers and directors and, in the ERISA case, also certain management-level employees. By an Order dated May 5, 2003, the Court consolidated the litigation into two related actions: the *In re Electronic Data Systems Corp. Securities Litigation,* arising under securities laws, and the *In re Electronic Data Systems Corp. "ERISA" Litigation* ("ERISA Litigation"), arising under ERISA. Subsequently, a securities law claim under sections 12(a)(1) & 15 of the Securities Act of 1933, 15 U.S.C. §§ 77l(a)(1) & 77(o), was added to the ERISA Litigation.

The Court, on May 5, 2003, appointed Susman Godfrey L.L.P. as lead and liaison counsel for the plaintiffs in the ERISA Litigation, and appointed Keller Rohrback L.L.P., Izard Nobel LLP (f/k/a Schatz & Nobel, P.C.), Jeffrey Abraham of Abraham & Associates and James Baskin of The Baskin Law Firm to serve as the Plaintiffs' Executive Committee ("Class Counsel").

Following appointment, Class Counsel diligently and vigorously prepared their case by completing substantial discovery, which included, but was not limited to, the following:

- Reviewing and analyzing EDS's public filings with the SEC, public conference calls, press releases and other public statements;

- Reviewing and analyzing other publicly available information concerning EDS and the Complaint allegations, including news articles and analyst reports;

-

- Obtaining and reviewing digital media from several sources, including numerous CDs and DVDs containing information and communications and videotapes of Company meetings;

- Serving interrogatories on Defendants, posing a number of discrete questions related to this litigation;

2

- Preparing for and  participating in more than 30 depositions, resulting in more than forty days of testimony from current and former EDS employees, officers, directors, experts, and third party witnesses;

- Retaining damages and other experts and engaging in substantial expert discovery on merits and class issues; and

- Litigating the numerous issues that arose throughout the course of discovery.

Memorandum in Support of Lead Plaintiffs' Counsels' Joint Petition for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Incentive Award to the Class Representatives ("Fee Petition") at 5-6; Declaration of Barry Barnett ("Barnett Decl.") ¶ 24.

In addition, there had been substantial motion practice, including:

- Defendants' motions to dismiss, which the Court denied in substantial part (Dkt. No. 44);

- Plaintiffs' motion for class certification, which the Court granted in substantial part (Dkt No. 133), but which ruling Defendants appealed to the Fifth Circuit;

- Defendants' motion to dismiss certain claims in Plaintiffs' Third Amended Consolidated Class Action Complaint (the "Complaint"), which was pending at the time the case was stayed; and

- Defendants' motions for summary judgment, which were pending at the time the case was stayed.

In the ERISA case, on January 18, 2007, the Fifth Circuit decertified the ERISA class and ordered further class proceedings pursuant to the standards set forth in its opinion. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007).   After this remand, Lead Plaintiffs filed the operative Complaint, which alleges that the Defendants breached fiduciary duties with respect to the Plan in violation of ERISA (1) by allowing Plan investments in EDS stock at a time when it was an imprudent investment; (2) by failing to monitor other Plan fiduciaries appropriately or furnish accurate information to them; (3) by failing to provide Plan

3

participants and beneficiaries with complete and accurate information concerning the prudence of investing in EDS stock; (4) by failing to act solely in the interests of Plan participants and beneficiaries; and (5) by selling or allowing to be sold to the Plan unregistered EDS stock in violation of 15 U.S.C. § 77e(a)(2).

The parties thereafter engaged in further class and class expert discovery, Plaintiffs filed their Renewed Motion for Class Certification and Brief in Support (Dkt. No. 270), and Defendants were prepared to respond when the case was stayed pending consideration of the Settlement. Various discovery motions were also pending at the time of the stay, as was the Defendants' motion to dismiss and motions for summary judgment, as noted above.

In sum, at the time the Settlement was reached, the parties were in an excellent position to evaluate the strengths and weaknesses of each side's case. The issues in the present case are extremely well-developed. Class Counsel have carefully researched the relevant law, have a full understanding of the legal and factual issues surrounding this case, and are in an ideal position to evaluate the merits of their case. Having completed a thorough investigation in order to properly evaluate the case, Class Counsel strongly recommend the proposed Settlement as fair, adequate and in the best interests of the Class.

### III.   **THE SETTLEMENT**

#### A.   **The Settlement Negotiations.**

The parties made extensive efforts to reach a settlement through mediation. Their efforts included several mediations with Judge Robert M. Parker, accompanied by follow-up meetings and telephone conferences that eventually resulted in the Settlement Agreement. During this period, the securities action settled, which settlement will result in a cash payment to the Plan of an amount estimated to be approximately $3.7 million.

Judge Parker has prepared a declaration in support of the Settlement.[2]  The Settlement has been reviewed in detail and approved by the Independent Fiduciary engaged to review the Settlement on behalf of the Plan, and is also supported by the Department of Labor.

As noted above and in the Preliminary Approval Motion, at the time the Settlement was reached, the parties had engaged in more than five years of extensive, hard-fought litigation prior to the Settlement, including fact and expert discovery and motions practice.  Class Counsel, who are highly experienced in complex class action and ERISA litigation, and have litigated many of the seminal ERISA cases in this area, including *WorldCom* and *Enron*, had ample information on which to negotiate the Settlement.

Ultimately the parties were able to reach an agreement with a value of  estimated to be $31,500,000.  The settlement was the result of months of arm's-length negotiations among the parties, their highly experienced counsel, the insurers and insurers' counsel, and Judge Parker. *See* Parker Decl.; Barnett Decl. ¶¶ 6, 7, 9, 15.  The settlement process could hardly have been more thorough, adversarial, or professional.

### B.      The Settlement Terms.

The parties finally reduced their agreement to writing in the Settlement Agreement dated February 14, 2008.[3]  Under the Settlement Agreement, Defendants have paid into the Settlement Fund $12,500,000.  This amount, less the amount the withheld for administration, and Court-ordered expenses, attorneys' fees, and named Plaintiffs' compensation, will be paid to the Plan and allocated to the Plan accounts of the participants and former participants according to their losses as a result of the Plan holding or purchasing interests in the EDS 401(k) Plan.[4] Additionally, the Settlement provides for the following injunctive relief:

---

[2] Declaration of Robert M. Parker ("Parker Decl."), Exhibit C to the Preliminary Approval Motion.
[3] The Settlement Agreement was previously attached as Exhibit A to the Preliminary Approval Motion.
[4] Because the payments are made into the Plan, not paid out to individuals, the tax-privileged nature of these funds is preserved.

853447v1/006209

- A guarantee to continue the employer match for three years after entry of the Final Order at the rate of 25% of an employee's contribution to the Plan for employee contributions up to 6% of the employee's pay.

- This employer match shall be paid in cash to the Plan, with the participant able to allocate these match funds into any of the available investment options offered by the 401(k) Plan that the participant selects.

- The EDS Company Stock Fund shall be continued as a Plan investment fund for three years from the Effective Date of the Settlement, upon which the fund shall be terminated as a Plan investment fund, with whatever amounts remaining in that fund being allocated to a Qualified Default Investment Alternative under the Plan.

- During this continuation period, the EDS Company Stock Fund shall continue to invest primarily in EDS stock (or stock of any successor to EDS) subject to the liquidity needs of the EDS Stock Fund to facilitate transactions.

- During this continuation period, the EDS Company Stock Fund will be closed to new investments, but the participants may remove their investments from the EDS Company Stock Fund in amounts and timing that they so choose.

The Settlement, including cash payment and injunctive relief (which relief includes a guarantee of future cash payments) has been valued at no less than $19 million, for a total minimum settlement value of $31.5 million.  *See* Preliminary Approval Motion at 5 and Declaration of Charles Cox (Exhibit B to Preliminary Approval Motion) at pp. 7 and 11.  This represents a substantial recovery for the Settlement Class.

C.     **Implementation of the Notice Plan.**

Pursuant to the Preliminary Approval Order, the approved Notice of Class Action ("Class Notice") was sent to approximately 80,000 potential Settlement Class members consisting of current and former participants of the Plan as follows:

6

- 42,855 Class Notices were sent by email, which were divided into 5 staggered e-mails sent between June 19, 2008, and June 20, 2008;

- 37,611 Class Notices sent by First Class US Mail, postage prepaid, on June 20, 2008;

- To address the issue of Class Notices that were sent by email but returned as undeliverable or otherwise bounced back, a second round of 15,125 Class Notices were sent by U.S. Mail to those individuals on July 3, 2008; and

- 522 Class Notices initially sent by U.S. Mail were re-sent by U.S. Mail to forwarding addresses.

Affidavit of Michelle M. La Count, Esq., ¶¶ 5 - 12.

Thereafter, pursuant to the Preliminary Approval Order, as subsequently modified, the Court-approved Summary Notice was published over the Business Wire on June 25, 2008. *Id.* at ¶ 17, Exhibit D.

In addition, Plaintiffs (through Class Counsel), created a dedicated Settlement website through which the Plan's current and former participants could (1) view a summary description of the lawsuit and the status of the litigation; (2) access the Settlement Agreement and related Settlement documents, including the Class Notice and Summary Notice; (3) review answers to "frequently asked questions" regarding the litigation and the settlement; (4) obtain the email address and toll-free telephone number established by Class Counsel in order to provide participants with efficient vehicles by which to relay questions or concerns regarding the Settlement to Class Counsel. Barnett Decl. at ¶¶ 17-23.[5] The website is located at www.kellersettlements/EDS.html and its contents and information were made accessible in advance of the dissemination of the Class Notice and has been and will continue to be updated as necessary. *Id.*

---

[5] Email and telephone inquiries regarding the Settlement were promptly responded to by Class Counsel and dedicated personnel responsible for overseeing the administration of the Settlement. Barnett Decl. ¶ 23. As of July 10, 2008, Class Counsel had responded to 32 telephone inquiries and 109 emails. *Id.*

As of Friday, July 11, 2008, no Settlement Class member has filed an objection, notwithstanding the wide dissemination of the Notice and information concerning the Settlement. The deadline for objections, however, is July 28, 2008.  Should any objections be served, Class Counsel will respond to them promptly.

**IV.    ARGUMENT IN SUPPORT OF SETTLEMENT**

**A.    The Law Favors and Encourages Settlement.**

Public policy strongly favors the pretrial settlement of class action lawsuits.  *See* Preliminary Approval Motion at 5 (citing *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  Consequently, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (*quoting Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176 (5th Cir. 1975); *D. H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir.), *cert. denied*, 404 U.S. 851 (1971); *Fla. Trailer & Equip. v. Deal*, 284 F.2d 567 (5th Cir. 1960)).

**B.    The Role of the Court in Determining Whether to Approve a Class Action Settlement.**

"In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton*, 559 F.2d at 1330 (5th Cir. 1977) (citing *Young v. Katz*, 447 F.2d 431 (5th Cir. 1971)); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981); *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) (per curiam).  A class action settlement must also satisfy Rule 23's requirements, and notice must be given "in a reasonable manner." Fed. R. Civ. P. 23(e).

The court has wide discretion in approving the settlement. *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978).  The Supreme Court has cautioned, however, that in

8

reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Cotton*, 559 F.2d at 1330. In this case, the Court has already granted preliminary approval, and such approval also gives rise to the presumption that the settlement is fair, adequate and reasonable. *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (citing *United States v. City of Miami*, 614 F.2d 1322, 1333 (5th Cir. 1980), *on reh'g*, 664 F.2d 435 (5th Cir. 1981)). When evaluated under the applicable factors, there can be little doubt that this Settlement satisfies the fairness and other standards required for approval.

> **C.     The Settlement Is "Fair, Adequate and Reasonable."**

In evaluating whether a proposed settlement is "fair, adequate and reasonable" and has been entered into without collusion between the parties, the Court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co.*, 284 F.2d at 571. The Fifth Circuit provides six factors to analyze in determining whether a settlement should be given final approval:

> (1)     The assurance that there is no fraud or collusion behind the settlement;
>
> (2)     The complexity, expense and likely duration of the litigation;
>
> (3)     The stage of the proceedings and the amount of discovery completed;
>
> (4)     The probability of plaintiffs' success on the merits;
>
> (5)     The range of possible recovery; and
>
> (6)     The opinions of class counsel, class representatives and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d at 172; *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986).

These factors – with the exception of that portion of factor 6 pertaining to the opinion of absent class members – were previously addressed at length in the Preliminary Approval Motion. The analysis of those factors remains the same. Thus, rather than repeat the full discussion here,

853447v1/006209

Plaintiffs respectfully refer the Court to pages 7-13 of the Preliminary Approval Motion, which they incorporate by reference, and summarize the satisfaction of these factors as follows:

Factor 1: With respect to factor 1, concerning the absence of collusion, Plaintiffs note the filing of the April 23, 2008 Declaration of Judge Parker, who attests, as mediator, to the lack of collusion in these settlement negotiations. In addition, the Settlement has been approved by the Independent Fiduciary engaged to review the Settlement on behalf of the Plan and is supported by the Department of Labor. Plaintiffs likewise incorporate by reference the discussion contained at page 6 of their Fee Petition, as well as paragraphs 6, 7, 9, and 15 of the Barnett Declaration, which contain further information on the settlement achieved here. The Settlement was negotiated at arm's length by experienced counsel. Throughout the settlement discussions, Plaintiff's counsel and counsel for the Defendants each diligently and vigorously advanced their respective claims and defenses.

Factors 2 and 3: Factors 2 and 3 concern the stage of the litigation and discovery, and the complexity, expense and likely duration of further litigation. The parties had engaged in more than five years of hard-fought litigation, including substantial fact and expert discovery, and motions to dismiss, for class certification, and for summary judgment were pending at the time the case was stayed. Counsel was fully informed of the facts of the case and state of the law[6] when negotiating the Settlement. This case has been and would continue to be complex and expensive, and would likely require several additional years to litigate to its final conclusion, including appeals, all the while exposing Plaintiffs and the Settlement Class to the risk of no recovery at all.

Factors 4 and 5: Factors 4 and 5 concern the probability of Plaintiffs' prevailing on the merits and the range of possible recovery and certainty of damages. As evidenced by the vigor

---

[6] With respect to the unsettled nature of law in this area, in addition to the appellate decisions cited in the Preliminary Approval Motion at page 9 n.7, on April 25, 2008, the Fifth Circuit issued its decision in *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. Apr. 25, 2008), affirming the district court's grant of summary judgment in an ERISA company stock case. While Plaintiffs do not believe this opinion to be determinative in this case, particularly given the factual differences between the cases, Defendants would likely argue the opposite, and Class Counsel have given the opinion due consideration.

with which they have prosecuted the action, and the amount of time and money they have expended toward that end, Plaintiffs' Counsel believe strongly in the merit of their claims in this case.  Nonetheless, Plaintiffs and Class Counsel are mindful that in order to prevail at trial, Plaintiffs face several significant obstacles, including surviving dismissal and summary judgment motions and any ensuing appeals on those or other determinations, including class certification.  There is also the risk that the Court would adopt a damages theory different than Plaintiffs' preferred method, and this could substantially diminish Plaintiffs' recovery even if they were to prevail on all claims.

Factor 6:  With respect to factor 6, Plaintiffs previously addressed the opinions of Class Counsel and the Plaintiffs.  The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed*, 703 F.2d at 175.  Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway*, 576 F.2d at 1216; *see also United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982) (particularly where experienced counsel have negotiated a settlement at arm's-length with the help of an experienced mediator, a strong initial presumption is created that the compromise is fair and reasonable).

While the opinion of absent class members cannot be addressed in full until after the period for submission of objections has expired on July 28, 2008, we note that, as of Friday, July 11, 2008, no Settlement Class member has filed an objection, notwithstanding the wide dissemination of the Notice and information concerning the Settlement.  Should any objections be served, Class Counsel will respond to them promptly.

In sum, when examined under these applicable criteria, this Settlement is an excellent result for the Class.

**D.     The Proposed Settlement Class Meets the Prerequisites for Class Certification Under Fed. R. Civ. P. 23(a) and (b).**

In the Preliminary Approval Order, the Court found that the Settlement Class met the requirements for class certification under Fed. R. Civ. P. 23(b)(1)(A) for the ERISA claims and 23(b)(1)(B) for the Securities Act Claim.[7]  The Court likewise found that appointed counsel met the requirements for class counsel, and appointed them as class counsel, under Fed. R. Civ. P. 23(g).  *Id.* at ¶ 1(f).  The grounds for class certification are set out at pages 13-14 of the Preliminary Approval Motion.  No objection having been made to date with respect to certification, and the grounds previously discussed being equally applicable now, Plaintiffs respectfully submit that certification of the Settlement Class is appropriate and fully supported by abundant authority of ERISA cases of this type.[8]

Plaintiffs' claims are all based on conduct by Defendants that is generally applicable on a class-wide basis.  Plaintiffs allege that Defendants breached their fiduciary duties to the participants by (among other things): (1) allowing Plan investments in EDS stock at a time when it was an imprudent investment; (2) failing to monitor other Plan fiduciaries appropriately or furnish accurate information to them; (3) failing to provide Plan participants and beneficiaries

---

[7] The Settlement Class is defined as "(A) All participants and former participants in the Plan and their beneficiaries, for whose individual accounts the Plan purchased and/or held interests in EDS stock through the EDS Company Stock Fund (f/k/a the EDS Stock Fund or the GM Class E Stock Fund) at any time during the period September 7, 1999 through and including October 9, 2002, and the beneficiaries of such participants or former participants; and (B) all participants and former participants in the Plan and their beneficiaries, for whose individual accounts the Plan purchased EDS stock through the EDS stock Fund at any time during the period October 20, 2001 through and including November 18, 2002.  Excluded from the Settlement Class are EDS, any other Defendants and the Immediate Family, heirs, successors or assigns of any Defendant."  Preliminary Approval Order at pp. 1-2.

[8] *See, e.g., Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 U.S. Dist. LEXIS 33981 (C.D. Cal. Apr. 16, 2008) (certifying class under Rule 23(b)(1)(A)); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 495 (E.D. Mich. 2008) (finding certification of settlement class proper under Rule 23(b)(1)(A) and (B) and (b)(2); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007) (certifying class under Rule 23(b)(1)); *Smith v. Aon Corp.*, 238 F.R.D. 609 (N.D. Ill. 2006) (certifying class under Rule 23(b)(1) and (b)(2)); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) (certifying class under Rule 23(b)(1)); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL-1335, 2006 U.S. Dist LEXIS 58278 (D.N.H. Aug. 15, 2006) (certifying class under Rule 23(b)(1)(B)); *Enron*, 2006 U.S. Dist. LEXIS 43145, at *65-67 (finding certification under both 23(b)(1)(A) and (B) appropriate); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004) (certifying class under Rule 23(b)(1)(A) and (B)); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 U.S. Dist. LEXIS 19786 (S.D.N.Y. Oct. 5, 2004) (certifying class under Rule 23(1)(B)); *Furstenau v. AT&T Corp.*, No. 02-5409, 2004 U.S. Dist. LEXIS 27042 (D.N.J. Sept. 2, 2004) (certifying class under Rule 23(b)(1)); *Rankin v. Rots*, 220 F.R.D. 511, 522 (E.D. Mich. 2004) ("We find that the ERISA actions . . . are appropriate for certification under both [23(b)(1)(A) and (b)(1)(B)].").

12

with complete and accurate information concerning the prudence of investing in EDS stock; (4) failing to act solely in the interests of Plan participants and beneficiaries; and (5) selling or allowing to be sold to the Plan unregistered EDS stock in violation of 15 U.S.C. § 77e(a)(2). These fiduciary breaches were directed to the Plan as a whole, not specific class members. ERISA's remedial provisions, including restoration of the Plan's losses, are by definition plan-wide remedies. *See Countrywide*, 2008 U.S. Dist. LEXIS 33981, at *10-11 (granting class certification where, as here, "all potential plaintiffs were allegedly exposed to the same breach of fiduciary duties by the same Defendants as trustees of the same pension funds"); *Kmart*, 220 F.R.D. at 518 (noting in decision granting class certification that "the complaint alleges that defendants acted similarly with regard to all contributions to the Plan, without regard to whether these contributions were from voluntary employee contributions or employer matching contributions"); *see also Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (defendants' liability for ERISA violations "is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries"); *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (noting that "[t]he right to recovery, after all, belongs to the plan"). As the Supreme Court held recently, "§ 502(a)(2) . . . does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *La Rue* v. *DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1026 (2008).[9] Thus, the Settlement Class satisfies all the requirement of Rules 23(a) and (b)(1).

---

[9] In their concurring opinion, Justices Thomas and Scalia explain the point more fully: "The allocation of a plan's assets to individual accounts for bookkeeping purposes does not change the fact that all the assets in the plan remain plan assets. A defined contribution plan is not merely a collection of unrelated accounts. Rather, ERISA requires a plan's combined assets to be held in trust and legally owned by the plan trustees. See 29 U.S.C. § 1103(a) (providing that "all assets of an employee benefit plan shall be held in trust by one or more trustees"). In short, the assets of a defined contribution plan under ERISA constitute, at the very least, the sum of all the assets allocated for bookkeeping purposes to the participants' individual accounts. Because a defined contribution plan is essentially the sum of its parts, losses attributable to the account of an individual participant are necessarily "losses to the plan" for purposes of § 409(a). Accordingly, when a participant sustains losses to his individual account as a result of a fiduciary breach, the plan's aggregate assets are likewise diminished by the same amount, and § 502(a)(2) permits that participant to recover such losses on behalf of the plan." *La Rue*, 128 S. Ct. at 1029.

Plaintiffs therefore ask the Court to grant final class certification pursuant to Fed. R. Civ. P. 23(e) in conjunction with final Settlement approval.

### E.   The Forms of Notice to Class Members Satisfy Rule 23 and Due Process Requirements.

In the event of a settlement, [t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(3)(1). In addition, due process requires that notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Notice should also provide a "very general description of the proposed settlement." *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982) (citation omitted). These requirements are easily met here.

The content of the Notice has already been approved by the Court, and was thereafter disseminated to the members of the Settlement Class. There is no issue with respect to the content of the Notice; it is as clear as such documents can be. As to the form of the Notice, we have given direct notice via mail and/or email to the approximately 80,000 Class members. *See* Affidavit of Michelle M. La Count, Esq., ¶ 7. We have also published Notice on the Settlement-designated website and published the Summary Notice in the form approved by the Court in Business Wire. *See id* at ¶ 17-18; Barnett Decl. ¶ 21. Thus, Class Counsel have given not merely appropriate notice, but the best notice practicable.

### F.   The Plan of Allocation Should be Approved.

Under ERISA, a case such as this involves claims for "plan-wide" relief, and the proceeds are paid into the Plan as an entity. ERISA § 409, 11 U.S.C. § 1109. Ultimately, however, the Plan's receipts must be allocated among the various participants of the Plan, and the Settlement Agreement (§ 2.1.4) calls for the Court, as part of the settlement approval process, to also approve the Plan of Allocation. Plaintiffs' proposed Order Approving EDS 401(k) Plan of Allocation is filed herewith. The Court should approve the Plan of Allocation because it

provides a fair, adequate, and reasonable allocation of relief to all members of the Settlement Class. *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982).

An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (citing *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994)); *In re Oracle Sec. Litig.*, No. 90-0931, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. Jun. 16, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

Here, the Plan of Allocation was designed by experienced Class Counsel familiar with the strengths and weaknesses of the potential claims of the Class members. It provides recovery to Class members, net of administrative expenses, and net of attorneys' fees and expenses that the Court may award, on a pro rata basis according to their recognized claims of damages.

The Plan of Allocation was described in the Preliminary Approval Motion and the Notice of Class Action Settlement disseminated to Class members pursuant to the Preliminary Approval Order, as detailed in Section III.C herein, and its mechanics are spelled out in the proposed Order Approving EDS 401(k) Plan of Allocation. As stated in the Notice, in general terms, the net settlement proceeds will be allocated to Settlement Class members on a *pro rata* basis such that the amount received by each Class member will depend on his or her calculated loss, relative to the losses of other Class members, related to Plan investments in EDS stock. Because the net losses are less than the total losses alleged to have been suffered in this action, each Class member's proportionate recovery will be less than his or her alleged loss. Any Class member who suffered a pro-rata loss of less than $10.00, as calculated according to the Plan of Allocation, shall receive no payment.

Plans similarly allocating class action settlement funds on a *pro* rata basis in ERISA company stock actions have been approved by many courts as a reasonable approach to allocating damages in cases of this type. *See, e.g., In re Mirant Corp. ERISA Litig.*, No. 03-1027

(N.D. Ga. June 12, 2007); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *59 (S.D.N.Y. Apr. 6, 2006) (Plan of Allocation provided "recovery to damaged investors on a pro rata basis according to their recognized claims of damages"); *In re Household Int'l., Inc. ERISA Litig.*, No. 02-8921 (N.D. Ill. Nov. 22, 2004); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (ERISA company stock case Plan of Allocation approved as fair and reasonable where it allocated "the settlement amount among plan participants based on their losses"); *Reinhart v. Lucent Techs., Inc.*, No. 01-3491 (D.N.J. March 15, 2004); *In re Providian Fin. Corp. ERISA Litig.*, No. 02-1001, 2003 WL 22005019 (N.D. Cal. June 30, 2003).  It has worked well in these and other cases,  and Class Counsel believe it will well serve the class members  here.

## V. **CONCLUSION**

For the reasons stated above, the Settlement represents a substantial recovery for the Class.  Plaintiffs, therefore, respectfully request that the Court approve the Settlement and enter the proposed Order and Final Judgment Approving Proposed Settlement and proposed Order Approving EDS 401(k) Plan of Allocation submitted herewith.

DATED: July 14, 2008.

Respectfully submitted,

SUSMAN GODFREY L.L.P.

**/s/Barry Barnett**
Barry Barnett
State Bar No. 01778700
Jonathan Bridges
State Bar No. 24028835
901 Main Street, Suite 5100
Dallas, Texas  75202-3775
Telephone: 214-754-1900
Facsimile:  214-754-1933

KELLER ROHRBACK L.L.P.
Lynn L. Sarko
Gary Gotto
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone: (206) 623-1900 (Seattle)
Telephone: (602) 248-0088 (Phoenix)
Facsimile: (206) 623-3384 (Seattle)
Facsimile: (602) 248-2822 (Phoenix)

IZARD NOBEL, LLP
Robert A. Izard
Andrew M. Schatz
Wayne T. Boulton
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT  06103
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

ABRAHAM, FRUCHTER & TWERSKY, L.L.P.
Jeffrey S. Abraham
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile: (212) 279-3655

THE BASKIN LAW FIRM
James D. Baskin III
State Bar No. 01872050
300 West 6th Street, Suite 1950
Austin, TX 78701
Telephone: (512) 381-6300
Facsimile: (512) 322-9280

POTTER MINTON, P.C.
Mike Jones
State Bar No. 10929400
E. Glenn Thames, Jr.
State Bar No. 00785097
110 North College, Suite 500
Tyler, TX  75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

WHATLEY DRAKE, L.L.C.
Joe R. Whatley, Jr.
2323 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 328-9576
Facsimile: (205) 328-96696

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on counsel of record via CM/ECF, on this 14th day of July, 2008, as follows:

Robert Rachal
Howard Shapiro
René E. Thorne
Nicole Eichberger
PROSKAUER ROSE L.L.P.
909 Poydras, Suite 1100
New Orleans, Louisiana 70112

Reid L. Ashinoff
SONNENSCHEIN NATH & ROSENTHAL
24th Floor
1221 Avenue of the Americas
New York, NY 10020-1089

Pamela Baker
SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower
Chicago, IL 60606

Patricia J. Villareal
Thomas R. Jackson
James Karen
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515

Fletcher L. Yarbrough
Tim Gavin
Mike Birrer
Jane Makela
CARRINGTON, COLEMAN, SLOMAN
   & BLUMENTHAL, L.L.P.
200 Crescent Court, Suite 1500
Dallas, TX 75201

Otis Carroll
Wesley Hill
IRELAND, CARROLL & KELLY, P.C.
6101 South Broadway, Suite 500
Tyler, TX 75703

**/s/Barry Barnett**
SBN: 01778700

18